# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1088

_____

United States of America,                    *
                                             *
                 Appellee,                    *
                                             *   Appeal from the United States
        v.                                    *   District Court for the
                                             *   District of South Dakota.
Jonathan Luken,                               *
                                             *
                 Appellant.                   *

_____

Submitted: November 11, 2008
Filed: April 3, 2009

_____

Before MELLOY, BOWMAN, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Jonathan Luken conditionally pleaded guilty to possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Pursuant to his plea agreement, Luken appeals the district court's[1] order denying his motion to suppress. Luken also claims the district court erred in sentencing him to five years' supervised release. We affirm the conviction and sentence.

_____

[1] The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, adopting the report and recommendation of the Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota.

# I.

An Immigration and Customs Enforcement ("ICE") investigation revealed that two credit card numbers believed to be Luken's were used in 2002 and 2003 to purchase child pornography from a website in Belarus. On July 25, 2006, three law-enforcement officers visited Luken at his place of employment. One of the officers, Agent Troy Boone of the South Dakota Department of Criminal Investigation, informed Luken that the officers believed Luken's credit card had been used to purchase child pornography. Boone told Luken that the officers wanted to speak with Luken privately about the matter and look at his home computer. Luken agreed to speak with them at his home and drove himself to his house to meet them.

Upon arriving at Luken's home, Luken allowed the officers to enter his house. Luken's wife was home, so Boone offered to speak with Luken privately in Boone's car. Luken agreed. Once inside the car, Boone informed Luken that Luken did not have to answer any questions, was not under arrest, and was free to leave. Luken nevertheless agreed to speak with Boone. Luken discussed the nature of his computer use and knowledge. He admitted to purchasing and downloading child pornography for several years. He also admitted to looking at child pornography within the previous month. He stated, however, that he believed he had no child pornography saved on his computer.

After Luken admitted to viewing child pornography, Boone asked Luken if officers could examine Luken's computer. Boone explained the nature of computer searches to Luken and told Luken that, even if files had been deleted, police often could recover them with special software. Boone asked Luken if a police search would reveal child pornography in Luken's deleted files. Luken stated that there might be "nature shots" on his computer, i.e., pictures of naked children not in sexually explicit positions, that he recently viewed for free. Boone then asked Luken to consent to a police search of Luken's computer, and Boone drafted a handwritten

consent agreement stating, "On 7-25-06, I, Jon Luken, give law enforcement the permission to seize & view my Gateway computer." Luken signed and dated the agreement.

After seizing Luken's computer, Boone obtained a state search warrant to examine it. Boone testified that he sought a warrant because he feared Luken would revoke his consent. That warrant, which stated it was good for ten days, gave police permission to search the computer for "[c]ontraband, the fruits of crime, or things otherwise criminally possessed" and "[p]roperty designed or intended for use in, or which is or has been used as the means of committing a criminal offense." Boone then removed the hard drive from Luken's computer and sent it to a state laboratory for analysis. He then left the state for computer-forensics training.

When Boone returned to South Dakota in late August, he discovered the state crime lab was backlogged and had not yet analyzed Luken's hard drive. At Boone's request, the lab returned the hard drive to Boone and Boone used forensic software to analyze it. Boone discovered approximately 200 pictures he considered child pornography. After speaking with a federal prosecutor, Boone randomly selected 41 of those pictures for which to prosecute Luken. Based on those 41 pictures, a grand jury indicted Luken for possession of child pornography.

After Luken was charged and pleaded not guilty, Luken filed a motion to suppress the evidence that Boone had collected from Luken's hard drive. A magistrate judge held a hearing on the matter and subsequently filed a report and recommendation that the motion be denied. Luken objected to the magistrate court's findings and the district court held a second suppression hearing. Before the district court ruled, however, Luken conditionally agreed to plead guilty, reserving the right to appeal (1) the district court's suppression decision and (2) any sentence the district court imposed above the advisory guideline range.

On August 21, 2007, the district court adopted the magistrate judge's report and recommendation and denied Luken's motion to suppress. As a result, on September 10, 2007, Luken appeared in a Rule 11 proceeding to enter his conditional guilty plea. During that proceeding, the district court relied on an incorrect statement in Luken's plea agreement and told Luken that the maximum term of supervised release for his crime was only three years. Title 18, section 3583(k) of the United States Code provides that "the authorized term of supervised release . . . for any offense under section . . . 2252A . . . is any term of years not less than 5, or life." 18 U.S.C. § 3583(k).

After pleading guilty, Luken, claiming legal innocence, filed a motion to withdraw his plea. The district court denied Luken's motion. Luken then filed multiple objections to the Presentence Investigation Report ("PSR"). Luken's objections, however, did not challenge the PSR's recommendation advising the court that the authorized term of supervised release was five years to life. On December 18, 2007, the district court sentenced Luken to 18 months' imprisonment and five years' supervised release. Luken filed a timely notice of appeal.

II.

A.

Pursuant to his conditional plea, Luken first appeals the district court's denial of his motion to suppress. He argues that Boone's computer search exceeded the scope of his voluntary consent, exceeded the scope of the search warrant, and was not timely executed. The government claims that the district court correctly found that Luken consented to the search, that the warrant authorized the search, and that the search was exercised in a reasonable time frame. "We review [the] district court's factual conclusions for clear error and its legal conclusions *de novo*." United States v. Guzman-Tlaseca, 546 F.3d 571, 576 (8th Cir. 2008).

"The Fourth Amendment protects individuals against unreasonable searches and seizures by the government." United States v. Williams, 521 F.3d 902, 905 (8th Cir. 2008). "Consensual searches do not violate the Fourth Amendment 'because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.'" Id. at 906 (quoting Florida v. Jimeno, 500 U.S. 248, 250–51 (1991)). "In order for a consensual search to be valid, consent must actually be given (either express or implied), and the person giving consent must have (actual or apparent) authority to do so." Id. "Consensual searches are reasonable if they do not exceed the scope of the consent given, and '[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?'" United States v. Santana-Aguirre, 537 F.3d 929, 932 (8th Cir. 2008) (quoting Jimeno, 500 U.S. at 251). Applying that standard, the question before us then is whether it was reasonable for Boone to consider Luken's consent to seize and "view" his computer to include consent to perform a forensic analysis on it. Jimeno, 500 U.S. at 251. We believe it was.

According to undisputed portions of the record, before Luken consented to police seizing and viewing his computer, Luken initially had told Boone that Luken believed there was no child pornography saved on his computer. Boone, however, explained to Luken that police could recover deleted files using special software. Boone then specifically asked Luken if such a search would reveal child pornography on Luken's computer. Luken responded that there probably would be such material on his computer and stated that police might find "nature shots" if they did such a search. At that point, Luken gave Boone permission to seize and view his computer without placing "any explicit limitation on the scope of the search." Id.

Given the above-described exchange, we agree with the district court that a typical reasonable person would have understood that Luken gave Boone permission to forensically examine Luken's computer. Boone made it apparent to Luken that

police intended to do more than merely turn on Luken's computer and open his easily accessible files. Boone explained that police possessed software to recover deleted files and asked Luken specifically if such software would reveal child pornography on Luken's computer. Luken responded by telling Boone that such a search would likely reveal some child pornography. He then gave Boone permission to seize and view the computer. In that context, a typical reasonable person would understand the scope of the search that was about to take place. Therefore, because we affirm the district court's finding that Luken consented to the search, we hold there were no Fourth Amendment violations, and Luken's further arguments regarding the motion to suppress are moot.

B.

Luken's second claim is that the district court erred by sentencing him to five years' supervised release. Luken argues we must overturn that portion of his sentence because the district court erroneously stated at Luken's Rule 11 proceeding that the maximum term of supervised release for Luken's crime was only three years. The government contends that Luken's appeal waiver in his plea agreement forecloses this issue, that the supervised-release term was statutorily mandated, and that Luken fails to satisfy the standard of relief for a Rule 11 error. Because Luken did not object to the error below, the parties agree we review for plain error. United States v. Todd, 521 F.3d 891, 896 (8th Cir. 2008) (citing United States v. Vonn, 535 U.S. 55, 58–59 (2002)).

Assuming without deciding that the appeal waiver in Luken's plea agreement did not foreclose argument on this issue, in order to merit relief for a Rule 11 error, Luken "must show not only a plain error in following the provisions of the rule, but also that the errors affected his substantial rights, and that failure to correct them would seriously affect the fairness, integrity, or public reputation of judicial proceedings." Id. (citing United States v. Olano, 507 U.S. 725, 732 (1993)). As to

the second requirement, "[a]n error in following the strictures of Rule 11 affects substantial rights only where the defendant shows a reasonable probability that but for the error, he would not have entered a guilty plea." Id. (citing United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004)). Luken fails to make this showing.

Although the district court made an errant statement at the plea colloquy, Luken presents no evidence to satisfy his burden to demonstrate a reasonable probability that, but for the error, he would not have entered a guilty plea. To the contrary, the record shows Luken did not raise this issue in his objections to the PSR and failed to object to the term of supervised release at sentencing. Together, these failures indicate the issue's relative unimportance to Luken's decision to plead guilty, and Luken presents no argument leading this court to conclude otherwise. Therefore, because we believe the record shows the error was harmless, we reject Luken's claim and affirm his sentence.

III.

For the foregoing reasons, we affirm.

_____