# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1861
_____

United States of America

*Plaintiff - Appellee*

v.

Melvin John Scherrer

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2016
Filed: March 11, 2016
[Unpublished]

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

A jury convicted Melvin Scherrer of drug and firearm charges. The district court[1] sentenced Scherrer to a total of 360 months' imprisonment. On appeal,

_____

[1] The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

Scherrer argues that the district court erred in denying his motion to suppress evidence obtained by Title III wiretaps and a global positioning system (GPS) device on his pickup truck. We affirm.

I.

This case arises out of a federal investigation involving a drug trafficking conspiracy. While investigating the conspiracy, agents obtained wiretap orders for cell phones used by targeted suspects of the conspiracy. A wiretap order was issued for Brent Bouren's (Scherrer's co-defendant) cell phone (target telephone #3). Next, a wiretap order was issued for Scherrer's cell phones (target telephones #5 and #6) and Jerry Addison's (Scherrer's co-defendant) cell phone (target telephone #4). Finally, an order was issued authorizing the renewed interception of communications to and from Scherrer's cell phone (target telephone #5). The agents also obtained an order to conduct GPS monitoring on Scherrer's pickup truck.

Scherrer filed a motion to suppress the evidence obtained by the wiretaps and GPS monitoring. A magistrate judge[2] held a hearing on Scherrer's motion and issued a Report and Recommendation (R&R) which recommended Scherrer's motion be denied. Scherrer objected but the district court adopted the R&R and denied Scherrer's motion. During trial, the government introduced evidence of communications to and from target telephones #3 and #5 and testimony regarding information obtained from the GPS device. The jury found Scherrer guilty, and the district court imposed a below-guideline-range sentence of 360 months.

---

[2] The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

## II.

On appeal, Scherrer challenges the denial of his motion to suppress evidence obtained by the wiretaps and the GPS device. "We review the denial of a motion to suppress de novo but review underlying factual determinations for clear error, giving due weight to the inferences of the district court and law enforcement officials." United States v. Milliner, 765 F.3d 836, 839 (8th Cir. 2014) (per curiam) (quoting United States v. Thompson, 690 F.3d 977, 984 (8th Cir. 2012)). "The district court's conclusion regarding a motion to suppress will be affirmed 'unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, the appellate court is left with the definite and firm conviction that a mistake has been made.'" United States v. Dukes, 758 F.3d 932, 936 (8th Cir. 2014) (quoting United States v. Rodriguez, 711 F.3d 928, 934–35 (8th Cir. 2013)).

## A.

"Wiretap application[s] must include 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" Milliner, 765 F.3d at 839 (quoting 18 U.S.C. § 2518(1)(c)). Prior to issuing a wiretap order, the district court "must find that 'normal investigative procedures' have failed or 'reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" United States v. West, 589 F.3d 936, 939 (8th Cir. 2009) (quoting 18 U.S.C. § 2518(3)(c)). "If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied." United States v. Turner, 781 F.3d 374, 382 (8th Cir. 2015) (quoting West, 589 F.3d at 939)). The district court in this case determined the government met the

necessity requirement of 18 U.S.C. § 2518, and thus, we review that determination for clear error.   Id. at 382–83.

Scherrer argues that the government's wiretap applications were facially insufficient to meet the necessity requirement.  Therefore, according to Scherrer, the district court erred in denying his motion to suppress evidence obtained through the wiretap orders.  The government responds that the wiretaps were necessary because the other investigative techniques employed by the agents were insufficient.

Here, the affidavits in support of the wiretap orders described the investigative techniques that were tried and failed; reasonably appeared to be unlikely to succeed; or were too dangerous to employ.  Before obtaining the three separate wiretap orders, agents used similar tactics including, for example: (1) prior wiretaps; (2) controlled purchases of narcotics; (3) physical surveillance; (4) tracking devices; (5) analysis of toll records; (6) pen register and trap and trace devices; (7) confidential and cooperating sources; (8) undercover agents; (9) interviews of Bouren and Scherrer; (10) financial investigations targeting Bouren and Scherrer; (11) search warrants of Scherrer's home; and (12) a surveillance camera at Scherrer's home.   As the magistrate judge found, "It is clear that the wiretaps at issue on defendant Scherrer's motion to suppress were not used as initial investigative techniques, but only after other techniques were used."

In addition, the affidavits in support of the wiretap orders explained why the above investigative techniques had not met the investigation's goals and why the wiretaps were necessary.  As the magistrate judge put it,

> The stated overall goals of this investigation clearly indicate the long lasting, highly developed, and extensive characteristics of the subject drug trafficking conspiracy under investigation.  The stated goals for the specific wiretaps indicate the investigators engaged in reasonable and

tailored considerations of why the wiretap authorizations were necessary.

The record recounted above shows beyond cavil that all of the many described investigative techniques were either used with some, but not sufficient and certainly not complete, success, or were considered and determined to be unsuited for acquiring the information reasonably considered necessary for a lawful prosecution of the target individuals.

Having reviewed the three affidavits, we agree with the district court's decision to adopt the magistrate judge's finding that the agents sufficiently articulated why the wiretaps were necessary to further the goals of the investigation.

The specific goals included in the affidavits were similar. In general terms, the affidavits asserted that the wiretaps were necessary to identify: (1) the identities of members and higher-level members of the organization; (2) the locations used by the organization to receive, store, and distribute narcotics and narcotics proceeds; (3) the sources of supply for the organization; and (4) the methods and means of acquiring, storing, and distributing narcotics and/or collecting and disposing of the proceeds. See West, 589 F.3d at 939 (finding the government met the necessity requirement for a wiretap where "[a]lthough the government had obtained a significant amount of information about the extensive drug operation in which [the defendant] was a primary player, the agent attested that normal investigative procedures had not uncovered the sources of the cocaine in which he dealt"). Not surprisingly, as the magistrate judge noted, the investigation's goals and the extension of the wiretap for Scherrer's phone demonstrated "the changes in the investigation as it matured and concentrated on defendant Scherrer."

Finally, the affidavits also discussed why other techniques were too dangerous or unlikely to be successful. For example, as summarized by the magistrate judge,

The investigators knew from this investigation and from their general experience and training that using trash searches, grand jury subpoenas, premature interrogations, and premature search warrant executions would most likely alert the target individuals to the investigation, thereby making the acquisition of evidence and information much less likely if not impossible.

Even if some normal investigative techniques were not too dangerous, as Scherrer asserts, "some normal techniques were tried and failed (or were unlikely to succeed in the first place), so the non-dangerous nature of these techniques is irrelevant." Milliner, 765 F.3d at 840; see also United States v. Daly, 535 F.2d 434, 438 (8th Cir. 1976) ("Congress prohibited wiretapping only when normal investigative techniques are likely to succeed and are not too dangerous."). In sum, we find the district court did not clearly err in adopting the magistrate judge's findings that the government met the necessity requirement under § 2518 and that Scherrer's argument to suppress the wiretap evidence was without merit. See Turner, 781 F.3d at 383–84.

B.

Scherrer argues the evidence obtained through the GPS must be suppressed because the affidavit in support of using the GPS monitoring device lacked probable cause. Although the affidavit consisted of facts taken from a cooperating source, Scherrer claims the affidavit "fails to mention any information that had been found reliable or that had been independently corroborated."

The government counters that the affidavit in support of the warrant established probable cause and relied upon a cooperating source and corroborating evidence. Further, the government notes the affidavit indicates Scherrer's truck was used in connection with drug trafficking activity in August 2012; a trained drug dog alerted to the presence of a narcotic odor on the truck when the truck was stopped, despite no drugs being located; and a cooperating source told investigators methamphetamine

was in the truck at the time of the stop and that the truck was regularly used to transport narcotics and cash. For these reasons, the government contends "there was a substantial basis for finding probable cause to believe that Scherrer was involved in drug trafficking activity and that the location data from the truck would lead to evidence of the commission of drug trafficking offenses."

"[T]he existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013) (alteration in original) (quoting Rodriguez, 711 F.3d at 936). "Where probable cause depends upon information supplied by an informant, '[t]he core question . . . is whether the information is reliable.'" Id. (alterations in original) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)). "Information may be sufficiently reliable to support a probable cause finding if . . . it is corroborated by independent evidence." Id. (alteration in original) (quoting Williams, 10 F.3d at 593). "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." Id. (quoting Williams, 10 F.3d at 593).

The affidavit in support of the warrant for use of the GPS device provided that the cooperating source's information *was* independently corroborated. Agents interviewed other individuals who corroborated the information. The cooperating source's information was also corroborated by surveillance of Scherrer; the stop of Scherrer's truck; and telephone toll analysis of Scherrer's cell phone, which indicated Scherrer was in contact with persons tied to a cartel operating out of Texas and Mexico and other investigations in the United States. See Keys, 721 F.3d at 518 ("[I]t is well established that even the corroboration of minor, innocent details can suffice to establish probable cause." (alteration in original) (quoting Rodriguez, 711 F.3d at 936)). Thus, we agree with the district court in adopting the magistrate

judge's findings that there was probable cause to install the GPS device on Scherrer's truck and that Scherrer's motion to suppress the evidence derived from the GPS device was without merit.

## III.

For the reasons discussed above, the district court's judgment is affirmed.

_____