MELLOY, Circuit Judge.
Earl Foy, Jr. pled guilty to three counts of mailing threatening communications, in violation of 18 U.S.C. § 876(c), and two counts of mailing threatening communications to extort money, in violation of 18 U.S.C. § 876(b). Foy subsequently moved to withdraw his plea. The district court[1] denied Foy’s motion and ultimately sentenced him to 480 months’ imprisonment. Foy appeals his sentence and the denial of the motion to withdraw his plea. We affirm.
I. Background
In May 2007, Foy was charged with sending threatening letters to “S.K.,” his ex-girlfriend and the mother of his son, between November and December 2005. Foy was incarcerated in state prison at the time the letters were sent. All three letters contained death threats against S.K. and others. Two of the letters also contained demands for sums equaling thousands of dollars, including one demand for a total of approximately $90,000 from S.K., her daughter, and her friend.
A jury trial commenced on April 20, 2009. At the close of the government’s case, Foy pled guilty to all charges without the benefit of a plea agreement. The court[2] accepted the plea, finding that Foy was competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that he made the plea knowingly and voluntarily. Three days later, through trial counsel, Foy filed a motion to withdraw the plea and to appoint new counsel. Foy subsequently submitted pro se memoranda in which he maintained that he wished to withdraw the *1033 plea primarily because the government presented evidence at trial that had been tampered with or forged. New counsel was eventually appointed in June. In July, the district court denied Foy’s motion to withdraw his plea.
The ease proceeded to sentencing. The presentence report (“PSR”) calculated Foy’s combined adjusted base offense level as twenty-five. Because Foy qualified as a career offender, his total offense level increased to thirty-two. See United States Sentencing Guideline § 4B1.1. The PSR recommended against a two-level reduction pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility. Foy objected to the recommendation against an aceeptance-of-responsibility reduction. The PSR computed his criminal history category as VI on two grounds: Foy’s accumulation of twenty-one criminal history points and his status as a career offender. Consequently, the PSR scored Foy’s advisory Guidelines sentencing range as 210 to 262 months’ imprisonment.
At sentencing, the district court overruled Foy’s objection to not receiving acceptance-of-responsibility credit, a decision that he does not appeal. The district court also gave notice at the beginning of the hearing that it intended to vary upwardly from the Guidelines. Foy’s counsel objected to the lack of advance notice. The court listed several reasons it believed warranted a variance. Defense counsel argued in response that Foy had a history of mental health and substance abuse issues from a young age and a difficult childhood that mitigated against a substantial sentence. The government offered as evidence Foy’s pro se requests to withdraw his plea, letters Foy sent to S.K. at work post-plea, and reports of disruptive behavior while awaiting sentencing. The court also admitted to the sentencing record a forensic competency evaluation prepared prior to trial as an indicator of Foy’s mental health. Upon consideration of the record, the court agreed with the PSR’s determination of an advisory Guidelines range, denied Foy’s motion for a downward variance, and imposed an upward variance, sentencing him to 480 months’ imprisonment. The court achieved the federal sentence by running the twenty-year statutory maximum sentences on the two § 876(b) counts consecutively, with the sixty-month sentences for the § 876(c) counts running concurrently to one another and to the § 876(b) counts. It also ordered the federal sentence to run consecutively to his incomplete state sentence. See U.S.S.G. § 5G1.3(a). The district court subsequently filed a sentencing memorandum addressing its reasoning for varying upwardly.
II. Discussion
A. Withdrawal of the Guilty Plea[3]
Foy argues that the district court should have allowed him to withdraw his guilty plea. In support of his position, he presents arguments that he failed to raise before the district court and brings for the first time on appeal. First, he asserts that some of his responses during the plea colloquy demonstrate that his mental state was impaired at the time. To the extent he presents this argument to establish his plea was unknowing or involuntary, “such a claim would not be cogni *1034 zable on direct appeal where he failed to present it to the district court in the first instance by a motion to withdraw his guilty plea.” United States v. Washington, 515 F.3d 861, 864 (8th Cir.2008) (citing United States v. Murphy, 899 F.2d 714, 716 (8th Cir.1990)); see also United States v. Young, 927 F.2d 1060, 1061 (8th Cir.1991). Second, he contends that the district court failed to inform him that the twenty-year statutory maximum sentences for the § 876(b) charges could be run consecutively. He alleges this omission was a violation of the requirement in Federal Rule of Criminal Procedure 11 to advise him of the maximum possible penalty he faced. See Fed.R.Crim.P. 11(b)(1)(H). Instances of noncompliance with Rule 11 may be raised for the first time on appeal, but our review is for plain error. United States v. Vonn, 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).
To succeed on plain error review in this context, a defendant must show “not only an error in the failure to follow Rule 11 but also a ‘reasonable probability that but for the error, he would not have entered a guilty plea.’ ” United States v. Garcia, 604 F.3d 575, 578 (8th Cir.2010) (quoting United States v. Luken, 560 F.3d 741, 745 (8th Cir.2009)). “Even if he establishes such a probability, relief is discretionary and ‘the court should not exercise that discretion unless the error seriously affectfed] the fairness, integrity or public reputation of judicial proceedings.’ ” Id. (quoting United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In determining whether a Rule 11 error affected a defendant’s substantial rights, the reviewing court considers the entire record, not merely the plea proceedings. Vonn, 535 U.S. at 74-75, 122 S.Ct. 1043.
Regarding the maximum penalties, the district court stated in relevant part: “Under Counts 1, 2, and 4 [the § 847(c) charges], there is a maximum possible fine of $250,000, a maximum possible imprisonment of 5 years.... On Counts 3 and 5 [the § 876(b) charges] there’s a maximum possible fine of $250,000. There’s a maximum possible imprisonment of 20 years in prison[.]” There is no dispute that the district court’s statements did not explicitly alert Foy to the possibility of consecutive sentencing. Foy cites our decision in United States v. Burney, 75 F.3d 442 (8th Cir.1996), in support of his claim that the district court’s disclosure was insufficient. In Burney, we stated that “[t]o the extent that the sentencing court is obligated [in accepting a plea agreement] to disclose the possibility of consecutive sentencing ... we believe that the district court implicitly did so by telling [the defendant] that ten years was the maximum term of imprisonment for each of the three counts.” Id. at 445. We agree that the district court’s statements were less clear than those in Burney. However, even assuming, without deciding, that the district court should have done more in this case, we do not believe a reasonable probability exists that he would have continued with trial but for the court’s misstep.
First, the record indicates that Foy actually knew early on that consecutive sentences could result in an even more onerous total sentence than the one eventually imposed. According to the competency report prepared prior to trial, Foy told the evaluator that he would be incarcerated possibly for fifty-five years if convicted—a sentence achieved by running the sentences consecutively on all five counts. Moreover, Foy does not appear to argue here that the district court’s statements during the plea colloquy confused his understanding or actually misled him about his potential sentence, as did the defendant in Burney. See id. at 444. Nor has Foy asserted that he thought a twenty-year sentence was the absolute maximum he *1035 could receive. In sum, because the record shows Foy was actually aware of the possibility of consecutive sentencing, any Rule 11 violation was unlikely to impact his decision to plead guilty. See Young, 927 F.2d at 1062.
Additionally, Foy had notice prior to sentencing of the possibility of consecutive sentencing and did not object. The PSR referred to consecutive sentencing pursuant to U.S.S.G. § 5G1.2(d), which directs consecutive sentencing beyond the highest statutory maximum “to the extent necessary to produce a combined sentence equal to the total punishment,” as well as § 5G1.3(a). Foy did not object to these portions of the PSR. The district court also addressed the possibility of consecutive sentences specifically for the § 847(b) charges during the sentencing hearing. Although Foy’s attorney objected generally to the lack of advance notice of an upward variance, Foy said nothing about the alleged Rule 11 violation. Rather, Foy went on to indicate during his allocution that he had attempted to withdraw his guilty plea because he regretted pleading without a plea agreement. Were his decision to plead guilty closely tied to court error during the plea colloquy, we think it likely he would have mentioned any misunderstanding resulting from it in the district court. See Garcia, 604 F.3d at 578 (“Had [the defendant’s] decision to plead guilty been closely dependent on the mistaken view that he faced a maximum of three years’ of supervised release, we believe it likely that he would have spoken up in the district court” where he had notice of the period of supervised release and opportunities to object). At heart, Foy’s arguments appear to state a belief that the district court should have warned him as to how consecutive sentences could be used to achieve the exact sentence eventually imposed. Rule 11 does not, however, guarantee a defendant the right to know his actual sentence before pleading guilty. Burney, 75 F.3d at 445. We reject this challenge to his plea.
B. Sentencing Issues
Foy first argues that the district court gave insufficient notice of its intent to apply an upward variance. As the district court correctly noted, however, it was not required to provide advance notice of its intent to vary upwardly. Irizarry v. United States, 553 U.S. 708, 128 S.Ct. 2198, 2202-03, 171 L.Ed.2d 28 (2008); see also United States v. Levine, 477 F.3d 596, 606 (8th Cir.2007); United States v. Sitting Bear, 436 F.3d 929, 932-33 (8th Cir.2006); United States v. Long Soldier, 431 F.3d 1120, 1122 (8th Cir.2005); United States v. Egenberger, 424 F.3d 803, 805 (8th Cir.2005). As we have explained, Federal Rule of Criminal Procedure 32(h) “provides that under certain circumstances the district court must give notice to the parties that it is contemplating a departure from the guidelines range. However, notice pursuant to Rule 32(h) is not required when the adjustment to the sentence is effected by a variance, rather than by a departure.” Long Soldier, 431 F.3d at 1122; see also Irizarry, 128 S.Ct. at 2203-04.
The Supreme Court has recognized that “there will be some cases in which the factual basis for a particular sentence will come as a surprise to a defendant or the Government.” Irizarry, 128 S.Ct. at 2203. In those cases, “[t]he more appropriate response” is for the district court “to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial.” Id. Here, Foy’s attorney objected to the lack of advance notice, but did not request a continuance to respond. Furthermore, counsel indicated he was not surprised that the court was considering an upward variance and did not identify any specific prejudice result *1036 ing from the timing of the notice. On these facts, we conclude resentencing is not required based on a lack of notice.
Foy also argues that the district court erred in varying upwardly to 480 months. Absent a procedural error by the district court, such as “failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence,” we review substantive reasonableness under an abuse-of-discretion-standard. United States v. Feemster, 572 F.3d 455, 461 (8th Cir.2009) (en banc). To determine whether a district court abuses its discretion, we consider broadly whether it “(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment.” Id. (quotation omitted). “[W]e are to take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.” Id. (quotation omitted). We may not, however, consider a sentence outside the range presumptively unreasonable. Id. In considering the extent of a variance, we give “due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance.” Gall v. United States, 552 U.S. 38, 50-51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (noting a major deviation from a Guidelines sentence should be supported by “more significant justification than a minor one.”). Finally, we note that when a district court achieves an upward variance through consecutive sentencing, it must indicate why the above-Guidelines sentence is sufficient, but not greater than necessary under § 3553(a), and why consecutive terms of imprisonment are reasonable under § 3584, in light of the § 3553(a) factors. United States v. Jarvis, 606 F.3d 552, 554 (8th Cir.2010).
Here, the district court recognized the variance from the top of the Guidelines range was substantial and stated that the factors outlined in § 3553(a)(1) and (2) primarily drove its decision. The court was concerned by the nature of Foy’s criminal conduct, which includes unscored assaults as a juvenile and several other violent crimes as young adult, a number of them against women; interference with official acts, such as assaulting officers and fleeing from arrest; and assaultive conduct and violations of prison rules, some which occurred while he was awaiting sentencing on the instant charges. The court also noted Foy had accumulated twenty-one criminal history points by the age of twenty-seven, substantially more than the minimum number of points associated with career offender status, see U.S.S.G. § 4Al.l(a), and eight points over the number needed to reach criminal history category VI. As a result, the court concluded that by this objective measurement, the Guidelines did not adequately account for his criminal history. Additionally, the court found a Guidelines sentence gave substantially too little weight to the nature and circumstances of the crime charged, in particular because Foy had threatened to kill multiple people, including S.K., who had been the victim of some of his prior assaultive conduct. The court characterized Foy as a “menace to society” and stated its belief that it was only a “matter of time” before Foy would kill someone. Our careful review of the record leads us to conclude that the district court’s concerns were justified.
As for the need for the sentence imposed, the court reiterated the serious nature of the offenses and Foy’s disrespect for the law as evidenced by his criminal history. Although the court believed a lengthy sentence was unlikely to deter *1037 Foy’s recidivism, it determined a long sentence would provide general deterrence to similarly situated persons. See 18 U.S.C. § 3553(a)(2)(B). Most importantly, the court found a sentence that would imprison Foy for most of his adult life was necessary to protect the public. See id. § 3553(a)(2)(C). The court considered the remaining § 3553(a) factors and determined them to be “at best, neutral.” Based on its weighing of the relevant factors, the court believed that the sentence imposed was sufficient but not greater than necessary.
Foy argues that the district court erred by failing to fully consider and give sufficient weight to the “mitigating” factors in his history. We disagree. The district court expressly considered his mental health, but disagreed with Foy as to its significance and impact on his case. Instead of helping his case, the court found the record indicated a high level of antisocial behavior that placed Foy in the “top 5 or 10” of the approximately 2,500 defendants the court had sentenced. The court did find “substantially mitigating” the lack of parental guidance and supervision he received as a child and his introduction at a young age to drugs and alcohol. It determined, however, that these factors did not sufficiently dispel a belief that a 480-month sentence was necessary. We cannot say the court erred in its consideration of mitigating factors in Foy’s history.
Foy next claims that his lengthy sentence was the product of the district court’s “predisposition” or “bias” against violent offenders, particularly those with a history of domestic abuse. In probing whether Foy was prejudiced by a lack of advance notice of an upward variance, the court frankly acknowledged its own history of “being harder on violent defenders [sic] than what the government often recommends” and for giving defendants with a “demonstrated lengthy recidivist history of violence and violence against women” a “very bad day.” The court also used strong language during the hearing and in its written order to characterize Foy’s criminal history and threat to the public. It was not improper, however, for the court to consider the type and nature of Foy’s prior criminal activities, and the court clearly did so within its analysis of the § 3553(a)(1) and (a)(2) factors. Foy further acknowledges that the post-Booker sentencing scheme has bestowed wide latitude to individual district court judges in weighing relevant factors. Accordingly, some variation in sentencing will result depending on the identity of the sentencing judge. See United States v. Booker, 543 U.S. 220, 263, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (“We cannot and do not claim that the use of a ‘reasonableness’ standard will provide the uniformity that Congress originally sought to secure.”).
In any case, we do not think “personal distaste” for the crime, as Foy asserts, ultimately improperly influenced the district court’s analysis in this case. Notwithstanding its statements, the district court permitted Foy a full opportunity to argue for a different sentence, engaged with defense counsel to clarify Foy’s position, acknowledged factors in Foy’s background were significant mitigators, and ultimately addressed his main arguments in its written order. The record reflects the court’s decision was the result of serious, reasoned consideration of factors for and against a lengthy sentence based on Foy’s individual circumstances.
That being said, the extent of the variance coupled with the length of the resultant sentence gives us pause in this case.[4] *1038 We are not entitled, however, under our deferential review to overturn a sentencing decision because we might have reasonably concluded a different sentence was appropriate. Feemster, 572 F.3d at 462. Our determination that the district court did not abuse its discretion in this case is bolstered by two factors. First, the district court provided “as our precedent requires, substantial insight into the reasons for its determination.” Id. at 464 (quotation omitted). Second, we believe the district court’s explicit justifications rest largely on “the kind of defendant-specific determinations that are within the special competence of sentencing courts.” Id. (quotation omitted). We conclude the sentence was procedurally sound and substantively reasonable.
III. Conclusion
For the foregoing reasons, we affirm.

. The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

. The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, presided at the trial and at Foy's plea hearing.

. Foy also raises the possibility of an ineffective assistance claim due to prior counsel’s failure to present argument to the district court on the plea withdrawal. He acknowledges, however, that a direct appeal is typically an inappropriate forum for such' a claim and requests that we preserve this issue for post-conviction proceedings. See United States v. McAdory, 501 F.3d 868, 872 (8th Cir.2007) ("We ordinarily defer ineffective assistance of counsel claims to 28 U.S.C. § 2255 proceedings.”). We do not entertain it further here.

. We note that the degree of upward variance in and of itself is not unheard of in our case law. See, e.g., United States v. Gnavi, 474 F.3d 532 (8th Cir.2007) (affirming upward *1038 variance to 120 months from advisory Guidelines range of 63 to 78 months).